CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 28 2019

JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HENRY ERIC ROUTON, | ) | CASE NO. 7:18CV00112 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| WILLIAM "BILL" Q. OVERTON, ET AL., | ) | By: Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

Henry Eric Routon, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. Routon alleges that the defendants, who are state and local government officials, violated his constitutional rights during separate incidents, in May 2014 and January 2018, when sheriff's deputies investigated and arrested Routon. The defendants named in the original complaint have filed motions to dismiss. Routon has responded to their motions, but has also filed an amended complaint. After review of the record, the court finds that the motions to dismiss are ripe for disposition as to that amended complaint. The court concludes that while many of Routon's claims must be dismissed, his Fourth Amendment claims and related state law claims against Defendants Dameron and Norton survive their motion to dismiss.

I. BACKGROUND.

A. The Amended Complaint.

Routon signed and dated his complaint on March 7, 2018,[1] and was granted the opportunity to proceed in forma pauperis under 28 U.S.C. § 1915(b). In carrying out its obligation under 28

---
[1] See Lewis v. Richmond City Police Dep't, 947 F.2d 733 (4th Cir. 1991) (finding that civil complaint of incarcerated pro se litigant must be considered "filed" within meaning of civil procedure rules when prisoner delivered complaint to prison authorities for mailing to clerk of the district court, and not when clerk of district court received complaint).

U.S.C. § 1915(d) to accomplish service on the defendants, the court encountered some difficulties and required Routon to provide additional information. In the meantime, those defendants who had already waived service filed motions to dismiss on June 8, 2018. Routon then submitted his motion for leave to file a proposed amended complaint, signed and dated on June 28, 2018. Because Routon's amended complaint must be considered filed on that date, the court finds that it is proper under Rule 15(a)(1)(B) (authorizing amended complaint within twenty-one days after motion to dismiss is filed). Therefore, the court will grant the motion and direct the clerk to add the defendants newly named in the amended complaint to the docket. Routon omitted Jay Mason and Robbie Hodges from the list of defendants in the amended complaint, and his submissions as a whole also indicate that he has abandoned his claims against them.[2] Therefore, the court will dismiss them from the case.[3]

## B. The May 2014 Incidents.

In May 2014, Routon shared a house with his fiancé, Michelle Page, in Rocky Mount, Virginia. On the evening of May 6, 2014, Bryan Johnson and Chad Austin, deputies of the Franklin County Sheriff's Office ("FCSO"), arrived at that house in separate patrol cars after receiving a report of "suspicious activity." Am. Compl. Exh. A, ECF No. 47-2. They found Page sitting in the driver's seat of her car, with Routon standing beside the car. The deputies blocked the end of the driveway with their cars, separated the couple, and began talking to them. While Johnson was speaking to Page, Routon explained to Austin that he and Page were having a dispute, but he had called someone for a ride to his parents' house. Austin allowed Routon to start walking

---

[2] In light of the amended complaint, the court will dismiss as moot Routon's later-filed motion, ECF No. 97, seeking to dismiss his claims against Jay Mason and to add defendants already named in the amended complaint.

[3] In addition, all claims against the following defendants have previously been dismissed from the case: Captain Caldwell and Major Bowman.

2

down the street. After a few minutes, however, Austin's patrol car pulled up next to Routon, the deputy ordered Routon to empty his pockets and surrender his cell phone, frisked him, and then drove him back to the house. Austin said "he was detaining [Routon] for investigation because 'something' had been found on" Page. Am. Compl. 14, ECF No. 47-1.

While Johnson was talking to Page, she told him that she had come to the car "to get away from Routon, because she knew that he wouldn't do anything out in the driveway." Am. Compl. Exh. A, ECF No. 47-2. She then "took a small baggie with a white substance in it from her bra and handed it to" Johnson, saying that she had "swiped it off the table as she came out of the house." Id. Michelle also told Johnson that Routon had taken a gun from her and hidden it in her car. After a search, they found a loaded .22 caliber handgun in the console, and Johnson secured it.

The deputies later began to question Routon about the gun and who owned it, but he invoked his right to remain silent. At this point, Page was handcuffed and placed in the backseat of Johnson's patrol car, and Routon was handcuffed and placed in Austin's car. They remained in the vehicles for five and a half hours.

Other deputies arrived—defendants Lyle, Hylton, Ingram and Shockley. Lyle and Shockley questioned Routon about the substance Johnson had found on Page, which Ingram field tested and identified as methamphetamine. Routon alleges that Page had earlier consumed methamphetamine in Johnson's presence and was "highly intoxicated." Am. Compl. at 18. Defendants Tyree, Straub, Newberry, and Willis, special agents with the Virginia Department of State Police ("VDSP") drove up, responding to a "meth lab" call from the dispatcher. Id. at 29. Defendants Peters, Naff, Angle, Waterman, Stiltner, and Shepard of the Boones Mill Fire-EMS-Franklin County Public Safety Company 7 all arrived in private vehicles, and other EMS

3

defendants (Evans, Rorrer, and Ball) drove up in a fire engine tanker truck. They had been "dispatched to assist" in decontaminating Page and Routon who were suspected of "running a meth lab." Id. at 30. The officers' vehicles blocked traffic on the street, and the noise and flashing lights drew a crowd of curious neighbors.

Johnson and another deputy, Joshua Mason, had Page execute a consent for a search of the house, despite her intoxicated state. That search was conducted just after midnight by deputies Hylton and Shockley, who did not have a search warrant.

Around 1:00 a.m., Page was taken from the patrol car, uncuffed, and led away. Routon shortly heard her "screaming and crying," and then officers returned her to the patrol car, now dressed in a "Tyvek suit." Id. at 20. Austin let Routon out of the car and led him to an open, grassy area of the yard, uncuffed him, and ordered him to remove his clothes to be "decontaminated." Id. at 21. Ingram explained that someone would spray Routon's naked body, using the hose from the firetruck parked in the street. Routon refused to remove more than his shirt, because male and female neighbors were watching.[4] Austin and Ingram "slammed" Routon to the ground, "beat" and "punched" him, "ripped" his clothing and shoes off, "dragged [him] naked and forced [him] to stand in front of the firehose." Id. at 22. The high-pressure stream of water caused him pain, particularly when it struck his genitals.[5] Afterward, the deputies had him don a Tyvek suit and put him back in handcuffs in the patrol car.

Routon was charged with four methamphetamine offenses. After a preliminary hearing in June 2014, these charges were dismissed by the Franklin County General District Court. In July

---

[4] Routon admits that the deputies put up a tarp to keep the public from seeing Page and Routon while they were being decontaminated. He claims, however, that it belonged to him and "had a hole of substantial diameter because it was dry-rotted and [he] had mowed [over] it by accident." Am. Compl. 28, ECF No. 47-1.

[5] An incident report from May 6, 2014, indicates that a "suppression device" was used while providing water at the scene. Am. Compl. Ex. C, ECF No. 47-2.

2014, a Franklin County grand jury returned five felony indictments, charging Routon with conspiracy, manufacturing methamphetamine, possession of precursors to manufacture the drug, distribution of methamphetamine, and possession of a firearm as a felon. Court records online indicate that Routon pleaded guilty in Franklin County Circuit Court on January 29, 2015, to the charge of possession of a firearm as a felon, and the drug-related charges were dismissed on January 29, 2015.[6] After several continuances, Routon was sentenced on the firearm conviction on April 7, 2017.

C. The January 2018 Incident.

On January 19, 2018, Routon was staying in Room 106 of the Hometown Inn Motel in Rocky Mount, with a guest, Brittany Nichols. About 4:00 p.m., FCSO Deputies Dameron and Norton came to the door and asked for Nichols.[7] She went outside to talk to Norton, and Routon agreed to step outside to talk. When he did so, Dameron moved to block Routon from reentering the room.

Dameron told Routon that before the deputies knocked on the motel room door, they had spoken to the motel owner, Mr. Patel, who verified for them that Routon's name was on the lease for Room 106. Patel then allegedly gave his "permission" for the deputies to search Room 106. Id. at 41. Dameron said the deputies would search the room, but Routon refused to consent to a search. Dameron said he would bring a drug-sniffing dog and search the room if the dog alerted for drugs. When Routon demanded to reenter the room to get his cellphone to call his attorney, Dameron physically restrained him from doing so and checked Routon's pockets. The deputy said

---

[6] Franklin County Circuit Court records of Routon's 2014 and 2018 criminal charges are listed under the name Henry Eric Routon, Jr. In his submissions to this court, Routon has referred to himself merely as Henry Eric Routon.

[7] The deputies' incident reports indicate that they had received a tip that Nichols was making and using methamphetamine in Room 106.

5

that Norton would get a search warrant for the room, but that Routon could not reenter because Dameron "smelled 'pot' on [him]." Id. at 37.

"As [Routon] reentered the room" anyway, Dameron "immediately crossed the threshold . . . into the room and "tackled [Routon] to the floor." Id. Dameron was "punching" Routon on one side, and Norton was "kneeing" him on the other side "for several minutes." Id. Face down, Routon was handcuffed behind his back, when Dameron "choked" him so that he could not breathe. Id. Dameron placed Routon in his patrol car. The deputies then entered Room 106 with Nichols, who was screaming and crying. Routon saw Norton leave the room and deposit something in her patrol car. Dameron attempted to question Routon about an item from the room, but Routon asked to speak to his attorney. While Norton was gone to get a search warrant, Dameron entered the room with Nichols, who allegedly showed him "a 'one pot' meth lab.'" Id. at 52. Dameron then telephoned Norton to tell her what details to put in the affidavit in support of the warrant application.

Once Norton returned with a search warrant, she conducted a search of Room 106. No marijuana was discovered there. Because of the contraband that was found, officials contacted the VDSP, which dispatched unnamed members of a "clandestine methamphetamine laboratory clean up crew" to the motel room. Id. at 46. Unspecified members of the Boones Mill Company 7 also reported to assist. Dameron drove Routon to the Franklin County Jail, where he was allowed to decontaminate himself in a holding cell using disinfecting wipes.

Warrants were obtained and served on Routon for assault on law enforcement, possession of a Schedule II drug, manufacture of methamphetamine, possession of paraphernalia, and obstruction of justice. See Am. Compl. Ex. G-2, ECF No. 47-3. Copies of the indictments that

6

resulted from one or more of these charges are not in the record. State court records online indicate that two 2018 charges against Routon in Franklin County Circuit Court have been dismissed.

### D. Routon's Claims.

Liberally construed, the amended complaint asserts the following claims:

1. On May 5-6, 2014, Johnson and Austin conspired to commit an unreasonable search and seizure of Routon's house, in violation of the Fourth Amendment.

2. Lyle, Ingram, Austin, and Johnson used excessive force against Routon on May 5-6, 2014, by slamming him to the ground, beating him, ripping his clothes off, and spraying him with a high-powered fire hose, and allowed female onlookers to see him naked, in violation of the Fourth Amendment, and the other defendants at the scene failed to intervene.[8]

3. Franklin County Sheriff Overton, Boones Mill Mayor Flora, Boones Mill Fire Chief Peters and the Fire Department itself, VDPS Superintendent Settle, and VDPS Colonel Flaherty are vicariously liable for the tortious actions of their subordinates during the May 2014 and January 2018 incidents.[9]

4. Dameron and Norton entered Routon's motel room on January 19, 2018, without a search warrant or lawful consent and later obtained a search warrant through false pretenses, in violation of the Fourth Amendment.

---

[8] The other defendants to this claim in the amended complaint are Hylton (also identified as Hilton), Shockley, Evans, Rorrer, Ball, Naff, Angle, Waterman, Stiltner, Shepard, Newberry, Straub, Willis, Tyree, (Joshua) Mason, and Newberry.

[9] Routon also asserts that the town, the sheriff's office, Boones Mill Fire Department, the VDPS, and the Commonwealth of Virginia are liable for the officers' actions on May 5-6,2014. Except for the fire department, however, he did not name any of these entities as defendants.

7

5. Dameron and Norton used excessive force against Routon on January 19, 2018, in violation of the Fourth Amendment and committed assault and battery on him.[10]

6. Dameron and Norton conspired with each other and with Patel, the motel owner, to perform a warrantless search of Routon's motel room, in violation of the Fourth Amendment.[11]

Routon also vaguely alleges other various torts under state law regarding the May 2014 incidents. As relief in this case, he seeks monetary damages.

II. DISCUSSION.

A. The Standard of Review.

"To survive a motion to dismiss [under Rule 12(b)(6) of the Federal Rules of Civil Procedure], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[12] The court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005). Although the court must take as true all well-pleaded factual allegations, the same is not true for legal

---

[10] Routon cites additional constitutional amendments, unconnected to any particular defendant's actions. The court concludes, however, that his claims are appropriately construed as arising only under the Fourth Amendment, which covers unreasonable searches and seizures, excessive force on arrest, and bodily privacy. Where "another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of 'substantive due process.''" Conn v. Gabbert, 526 U.S. 286, 293 (1999) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). "Challenges to the reasonableness of a search by government agents clearly fall under the Fourth Amendment, and not the Fourteenth." Id. Moreover, claims that law enforcement officials used excessive force in the course of an arrest, investigatory stop or other seizure of a person are properly analyzed under the Fourth Amendment, rather than under the Eighth Amendment or the Fourteenth Amendment. Graham, 490 U.S. at 394-95. Finally, the court finds no factual basis here for claims that Routon was denied equal protection or any violation of the Fifth Amendment.

[11] Routon also complains that Patel tried to make false charges on Routon's mother's credit card when she used it to pay the cost for Room 106. Routon, who is not an attorney, cannot litigate claims on his mother's behalf, however. See Hummer v. Dalton, 657 F.2d 621, 625-626 (4th Cir. 1981) (holding that prisoner proceeding pro se may only seek to enforce his own rights and not to vindicate the rights of others).

[12] The court has omitted internal quotation marks, alterations or citations here and throughout this memorandum opinion, unless otherwise noted.

8

conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In deciding the motion, the court may consider the facts alleged on the face of the amended complaint, as well as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997). The court may also look to documents attached to the amended complaint and those incorporated by reference without converting a defendant's motion to dismiss under Rule 12(b)(6) into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n. 3 (4th Cir. 2004).

### B. The May 5-6, 2014 Incidents.

Many of the defendants argue that Routon's claims concerning the May 2014 events are barred under the applicable statute of limitations. The court agrees.

Routon presents his federal constitutional claims under Section 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. See Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). Because Congress did not include time limits in the statute for filing a § 1983 action, such cases are governed by the statute of limitations governing general personal injury actions in the state where the wrongful conduct allegedly occurred. See Owens v. Okure, 488 U.S. 235, 239, 250 (1989). In addition, the state's tolling rules apply in calculating the timeliness of a § 1983 complaint. Board of Regents v. Tomanio, 446 U.S. 478, 484 (1980); Scoggins v. Douglas, 760 F.2d 535, 537-38 (4th Cir. 1985).

In Virginia, the limitations period for general personal injury claims is two years. See Va. Code Ann. § 8.01-243(A). Thus, Routon had two years from the date when his § 1983 claims

accrued to file them in a federal lawsuit. A Soc'y Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011). It is well established that "a cause of action [under § 1983] accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (citing United States v. Kubrick, 444 U.S. 111, 123 (1979)). In other words, the cause of action accrues when the plaintiff is "armed with the facts about the harm done to him, [and] can protect himself" by investigating them further and working diligently to prepare his legal claims for litigation within the statutory filing period. Kubrick, 444 U.S. at 123.

On the facts in Routon's amended complaint and state court records publicly available on the internet, it is clear that his § 1983 claims about the incident on May 5-6, 2014, accrued on those dates, when he knew the harm allegedly done to him and by whom. At that point, he had a duty to inquire into any other factual or legal details necessary to bring his lawsuit within the limitation period. Routon did not file his lawsuit, however, until March 7, 2018, at the earliest, nearly four years after the incidents at issue in his first set of claims.

Routon contends that the statute of limitations was tolled under Virginia law during the pendency of the criminal proceedings that stemmed from the searches of his house. See Va. Code Ann. § 8.01-229(K). He argues that the limitation period should be tolled until April 7, 2017, when he was sentenced on the firearm conviction. The court concludes that this tolling argument is without merit.

Section 8.01-229(K) states, in relevant part:

In any personal action for damages, if a criminal prosecution arising out of the same facts is commenced, the time such prosecution is pending shall not be computed as part of the period within which such a civil action may be brought. For purposes of this subsection, the time during which a prosecution is pending shall be calculated from the date of the issuance of a warrant, summons or capias, the return or filing of an indictment or information, or the defendant's first appearance in any court as

10

> an accused in such a prosecution, whichever date occurs first, until the date of the final judgment or order in the trial court, the date of the final disposition of any direct appeal in state court, or the date on which the time for noting an appeal has expired, whichever date occurs last. Thereafter, the civil action may be brought within the remaining period of the statute or within one year, whichever is longer.

To determine whether Section 8.01-229(K) applies, the court must compare the facts necessary for the underlying criminal charge with the facts giving rise to the civil action. The statute is tolled only if the facts are the same. See, e.g., Pinder v. Knorowski, 660 F. Supp. 2d 726, 732 (E.D. Va. 2009) (finding that § 8.01-229(K) would apply to toll the limitation period where criminal and civil cases both stemmed from search of plaintiff's residence).

Routon's case is clearly distinguishable from the situation in Pinder, however. Routon's civil case and the criminal proceeding that led to his firearm conviction are based on entirely different sets of facts. The firearm charge stemmed from the earlier incident on May 5, 2014, when officers arrived to address only a report of suspicious activity that turned out to be a domestic dispute between Routon and Page. Austin allowed Routon to leave. Johnson questioned Page and acquired the firearm that Routon had hidden in her car.

Johnson also acquired a baggie of methamphetamine that Page voluntarily gave to him, but that acquisition triggered a new investigation. Austin tracked down Routon, and the deputies began searches of Routon and the residence that resulted in the four methamphetamine charges that Routon later faced. Routon has not asserted any civil rights claim concerning the events that led to the discovery of the firearm in Page's car. Rather, his civil rights and state law claims are focused on events that occurred thereafter—during the efforts to search his residence and the deputies' manner of decontaminating Routon and Page because of their exposure to methamphetamine. Even if the court grants Routon tolling under § 8.01-229(K) from the time authorities first lodged drug charges against him until January 29, 2015, when the later-filed drug

indictments were dismissed, he still waited more than two years after that date—until March 7, 2018—to file his civil rights claims about the drug investigation and decontamination.

Therefore, the court will grant the motions to dismiss Routon's claims as untimely filed under § 8.01-243(A) against the following defendants regarding the May 5-6, 2014 incident: Austin, Ingram, Johnson, Hilton (also referred to as Hylton), Shockley, Peters, Lyle, Overton, Settle, and Flora.[13] The court will also grant the motion to dismiss filed by Dameron and Norton as to all claims concerning the May 2014 incidents, because Routon does not allege that these defendants were present during these incidents. As to the defendants newly named in the amended complaint to Routon's § 1983 claims concerning events on May 5-6, 2014—Evans, Rorrer, Ball, Naff, Angle, Waterman, Stiltner, Shepard, Newberry, Straub, Willis, Tyree, (Joshua) Mason, Newberry, the Boones Mill Fire Department—the court will summarily dismiss all such claims as time-barred, pursuant to 28 U.S.C. § 1915A(b)(1) (authorizing summary dismissal of civil action brought by prisoner seeing redress from governmental entity or officer if court concludes that claims are frivolous, malicious, or fail to state claim on which relief could be granted).

C. The January 2018 Incident.

1. Official Capacity.

The defendants named in Routon's allegations about this incident are also entitled to dismissal of several of his claims. First, Routon cannot prevail in claims for monetary damages against any of the defendants in their official capacities. See Will v. Michigan Dep't of State

---

[13] Some of these defendants did not expressly assert the statute of limitations as an affirmative defense to this claim. However, because the application of the statue of limitations is clear from the complaint and state court records, the court may raise that affirmative defense, sua sponte, and does so here as an alternative ground on which to grant the dismissal the defendants have requested. See, e.g., Todd v. Baskerville, 712 F.2d 70, 74 (4th Cir. 1983) (affirming summarily dismissal of claims where facts clear from complaint and court records show claims are barred by applicable statute of limitations).

12

Police, 491 U.S. 58 (1989). Therefore, the court will dismiss Routon's claims for monetary damages against defendants in their official capacities.

2. Supervisory Liability.

Second, under § 1983, Routon cannot hold supervisory officials vicariously liable for the alleged wrongdoings of their subordinates. Iqbal, 556 U.S. at 676 (holding that government officials may not be held liable for the unconstitutional conduct of their subordinates under theory of respondeat superior). Moreover, Routon has stated no facts suggesting that the alleged constitutional and state violations by defendants Dameron and Norton (or other law enforcement and safety personnel) on January 19, 2018, occurred pursuant to any policy for which their supervisors were responsible. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (stating legal standard for supervisory liability). On this ground, the court will dismiss all claims against defendants Flora, Settle, and Flaherty related to the 2018 incident.[14]

3. The Motel Owner.

The court also concludes that all § 1983 claims against motel owner Patel must be summarily dismissed. Routon alleges that Patel, by giving the deputies permission to enter Room 106, conspired with them to violate Routon's constitutional rights. A § 1983 conspiracy claim requires specific allegations that reasonably lead to an inference that members of the alleged conspiracy shared the same conspiratorial objective to "accomplish a common and unlawful plan" to violate the plaintiff's federal rights. Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). A complaint's allegations must amount to more than "rank speculation and conjecture," id. at 422, and merely labeling a chronological series of actions by multiple individuals as a

---

[14] Specifically, the court will grant the motions to dismiss filed by Flora and Settle and will dismiss the supervisory liability claims against Flaherty as frivolous, pursuant to 28 U.S.C. § 1915A(b)(1).

13

"conspiracy" will not suffice. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

Patel allegedly told the deputies that Routon had rented the room and gave them permission to enter it. Routon's bald assertion that these simple acts plunged Patel into a conspiracy with those deputies to violate Routon's constitutional rights is nothing more than "rank speculation and conjecture," attaching a conspiracy label to a series of events. Id. His allegations do not state any cognizable claim of conspiracy against Patel.

Moreover, to prevail in this § 1983 claim against Patel, Routon must prove that Patel was acting under color of state law when he talked to Dameron and Norton. Patel was not employed by the state or any state agency. Conduct by private individuals, like Patel here, constitutes state action only if it is "fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). To qualify as a person acting under color of state law for purposes of a § 1983 claim, an individual "must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999). The conduct Routon describes by Patel simply cannot be characterized as engaging in the state's actions or otherwise acting under color of state law. See Goldman v. Brannon, No. 5:11-CT-3051-FL, 2013 WL 5217771 (E.D. N.C. 2013) (finding hotel employees were not state actors when they reported plaintiff's suspicious credit card activity to police and confirmed his room number to officers, leading to police search of room and arrest of plaintiff) (citing Butler v. Goldblatt Bros., Inc., 589 F.2d 323, 327 (7th Cir. 1978) (merely supplying information to police officers who then act on their own initiative in arresting the plaintiff does not expose a private party to liability under § 1983)). For the reasons

14

stated, the court will summarily dismiss Routon's claims against Patel, pursuant to 28 U.S.C. § 1915A(b)(1), as frivolous.

4. Heck v. Humphrey

Norton and Dameron, the only remaining defendants to Routon's claims concerning the events on January 18, 2018,[15] argue that Routon's claims concerning the searches of his motel room are barred under Heck v. Humphrey, 512 U.S. 477 (1994), because criminal charges arising from that search were pending when he filed his complaint.

> Heck specifies that a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence. . . . [H]abeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of (not previously invalidated) state confinement. . . . [A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (interpreting the holding in Heck).

The facts in the case have evolved since the defendants filed their motion, however. Routon recently filed a motion to supplement the record regarding his claims about the events of January 19, 2018. The court will grant this motion and add the attached declaration and exhibit to the record.[16] In the declaration, among other things, Routon states that on January 28, 2018, he entered into a plea agreement that permitted him to admit guilt only as to simple possession of methamphetamine in exchange for dismissal of other charges. As stated, court records online indicate that two felony drug charges have been dismissed. Without copies of relevant court

---

[15] Except for his allegations against Patel and the supervisory defendants that the court has already discussed, Routon does not describe any personal involvement by any defendant other than Dameron and Norton in the alleged violations of his rights on January 19, 2018. Accordingly, the court will dismiss all claims based on the events of that day except those alleged against Dameron and Norton.

[16] Routon references several exhibits in the declaration that were not included in the mailing that the court received and docketed. The only document received other than the declaration itself and motion is a "search inventory and return," dated January 23, 2018, ECF No. 119-2.

15

documents and focused facts and argument about the application of Heck in light of Routon's plea agreement, the court concludes that Dameron and Norton are not entitled to dismissal of any claims under Heck.

    5. The State Law Claims.

Routon clearly asserts claims of assault and battery against Dameron and Norton, and the relationship between these claims and his other factual allegations is self-evident. As to the other state law claims in his amended complaint, however, that relationship is not clear. He merely asserts "false imprisonment, malicious prosecution, negligence, gross negligence, willful and wanton action, and or intentional or negligent infliction of emotional distress." Am. Compl. 59, ECF No. 47-1. Because Routon presents nothing more than labels here, he has not sufficiently stated any actionable claim. Iqbal, 556 U.S. at 678. Accordingly, the court will dismiss these state law claims without prejudice under § 1915A(b)(1).

### III. CONCLUSION.

For the foregoing reasons, the court concludes that Routon's amended complaint is properly filed. The motions to dismiss under Rule 12(b)(6) will be granted, with the exception of the motion filed by defendants Dameron and Norton, which will be granted in part. Their motion will be denied, however, as to Routon's Fourth Amendment and assault and battery claims concerning events on January 19, 2018. All claims against the defendants newly named in the amended complaint will be summarily dismissed under 28 U.S.C. § 1915A(b)(1). Finally, all state law claims, except the aforementioned assault and battery claims against Dameron and Norton,

will also be summarily dismissed under § 1915A(b)(1). An appropriate order will enter this day.

The clerk will send copies of this memorandum opinion and the accompanying order to the plaintiff and to counsel of record for the defendants.

ENTER: This 28th day of March, 2019.

*/s/ Glen Conrad*
Senior United States District Judge